# Laubach Realty Company *v.* Easton School District, Appellant.

Argued September 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Jacob A. Raub,* for appellant.

*John F. Oldt,* for appellee.

OPINION BY WOODSIDE, J., November 12, 1964:

This is an appeal by the Easton School District from the judgment entered on the pleadings in an assumpsit action brought to recover a portion of the 1963 school taxes. Laubach Realty Company (Laubach) paid its 1963 school tax under protest while awaiting the outcome of an appeal to the Northampton County Board of Assessment and Revision of Taxes (Board) from its real property assessment for 1962.

The school district says in its brief that the "only real question in the case" is whether or not the taxpayer followed the correct procedure in appealing its assessment under The Fourth to Eighth Class County Assessment Law of 1943, May 21, P. L. 571, as amended, 72 P.S. §5453.101 et seq.

The steps taken by the taxpayer to question the assessed valuation of its real property are as follows:

Upon being notified during the summer of 1962 that its 1962 assessed valuation was set at $586,600, Laubach filed a written appeal on August 17, 1962 with the Northampton County Board of Assessment and Revision of Taxes pursuant to §701, as amended, of The Fourth to Eighth Class County Assessment Law, supra, 72 P.S. §5453.701, which requires such appeal to be filed by the first day of September.

Article VII of the Assessment Law, supra, sets forth a specific time schedule for the board to adhere to in hearing the appeals and handing down its order affirming, raising or lowering the appealed assessment. In the instant case, as in *Taylor Borough Appeal,* 408 Pa. 56, 182 A. 2d 754 (1962), the board did not comply with the legislatively created schedule. Section 701 requires the board to begin hearings on the first business day following the first of September and to have all appeals heard and acted upon no later than the first day of October. In the instant case, the board, confronted by a multitude of appeals involving properties located in the area where Laubach's properties are located, undertook an exhaustive study of all assessments in that area, delaying its ultimate decision of Laubach's appeal until September 26, 1963, almost a full year after it was directed by the statute to have acted upon it.

Meanwhile Laubach's 1963 school taxes were levied upon the original 1962 assessment of $586,600, and became due on July 1, 1963. On August 23, 1963, over a year after its appeal was filed and with its outcome still pending, Laubach paid under written protest the 1963 school tax of $12,611.90, based on the original assessment.

When the board's order of September 26, 1963, previously referred to, was filed, it reflected a lowering of Laubach's *1962* assessment from $586,600 to $365,-700, reducing the 1963 tax which should have been paid by Laubach from $12,611.90 to $7862.55, or an overpayment of $4,654.36 (reflecting the appropriate adjustment of the 2% discount for payment prior to September 1, 1963).

After the taxpayer's request for the refund of its overpayment was refused, it brought this assumpsit action as authorized by the Act of May 21, 1943, P. L. 349, as amended, 72 P.S. §§5566c, 5566d. The school

district filed preliminary objections requesting that the court "enter judgment in favor of the School District" because (a) Laubach did not appeal to the Court of Common Pleas under §704 of the Assessment Law, supra, 72 P.S. §5453.704; (b) the board's order was "eleven months and twenty three days beyond the time limit allowed under Section 702 of the Act" referred to above; (c) the taxpayer "has not set forth any law or authority for the [board] to make any of its decisions retroactive"; and (d) the copy of the board's order attached to the Complaint is unsigned.

The essence of the objections is that the taxpayer did not file an appeal from the board's failure to act by October 1, 1962.

Section 704 states in part: "Any person who shall have appealed to the board for relief from any assessment, who may feel aggrieved by the order of the board in relation to such assessment, may appeal *from the order of the board* to the court of common pleas of the county within which such property is situated, and for that purpose may present to said court, or file in the prothonotary's office *within sixty days after the board entered its order on the said assessment,* a petition . . . setting forth the facts of the case, and thereupon the court shall proceed . . . to hear the said appeal . . . ." (Emphasis supplied) The Fourth to Eighth Class County Assessment Law, supra, §704, as amended, 72 P.S. §5453.704.

The school district contention is that the taxpayer was required to file its appeal by December 1, 1962, i.e., sixty days after October 1st, the last day upon which the board was directed by the legislature to hear and act upon appeals. There was no order of the board to appeal from until the order of September 26, 1963. The taxpayer had no standing to appeal, and the court had no jurisdiction to entertain an appeal until that order was filed.

*Taylor Borough Appeal,* supra, 408 Pa. 56, 182 A. 2d 754 (1962), decides this case. There the board also delayed its decision until after the mandated time. The issue there was: could the taxpayer aggrieved by the decision of the board appeal even though the statutory deadline had passed? The court stated: "The failure to have the assessment roll completed . . . was that of the Board and the failure to have an assessment of taxpayers' properties made so that taxpayers could file an appeal [within the statutory time schedule] was likewise that of the Board. If the argument of appellants be accepted what was the assessment from which taxpayers could have appealed within the statutory or the Board's deadline for appeals? The Board's failure to comply with the mandated duties under the statute or to make an assement of taxpayers' properties on or before the . . . deadline should not be visited upon the taxpayer. To hold otherwise would constitute a denial of due process and fair procedure, both of which must be accorded by quasi-judicial tribunals as well as the courts: (citation and footnote omitted)."

Likewise in the instant case, the board's failure to act upon the appeal properly taken to it within the statutory deadline shall not be visited upon a taxpayer who did everything required by the statute to protect its right to a refund of an overpayment in light of the board's subsequent decision.

Since the board's second and third contentions are but restatements of the "only real question in the case," i.e., the failure of the taxpayer to appeal from the nonaction of the board, they will not be discussed. As for the fourth contention, the court below stated ". . . it is admitted that the 1962 assessment was revised. The form of [the copy of the board's order] becomes immaterial and of no legal consequence."

After the court below entered judgment against the school district, the school district petitioned the court

to open the judgment and allow an answer to be filed to the complaint. The answer was attached to the petition, and after reviewing it, we agree with the court below which, in an opinion denying the petition, concluded "that the questions raised in the answer and new matter did not constitute a meritorious defense since they were either disposed of by the court in its [previous] opinion . . . or were irrelevant to the issue raised by the complaint."

The practice under which municipalities retain funds unlawfully received by them was referred to by this court as "unmoral," and the legislature was recognized as correcting such a practice by passage of the Act of May 21, 1943, P. L. 349, supra, which imposed "upon municipalities standards of common honesty in relation to the collection of taxes, *compelling* them, for the first time, to refund taxes paid to them under mistake of law." *Longacre Park Heating Co. v. Delaware County,* 160 Pa. Superior Ct. 252, 255, 50 A. 2d 706 (1947).

Judgment affirmed.